## E. A. Berdell v. The State.

### No. 5752. Decided May 5, 1920.

**1.—Misdemeanor—Theft—Sentence.**

Where, defendant was indicted for a felony but was only convicted of a misdemeanor theft, no sentence is necessary, the judgment performing the office of both judgment and sentence.

**2.—Same—Theory of Defense—Charge of Court.**

Where, upon trial of misdemeanor theft there was evidence that the defendant believed that the alleged property was included in that which he had purchased, and the court gave a proper charge on this theory of the case, there was no reversible error.

**3.—Same—Ownership—Possession—Rules Stated.**

Property lost or left out on the range, or commons, is in the possession of the owner as far as the law of theft is concerned, until it appears affirmatively that in some way such possession has been superseded by that of another, and in the instant case the ownership and possession was correctly alleged in the owner who had legal control, care, and management of the said property, although he was temporarily out of the county.

**4.—Same—Bailment—Embezzlement—Charge of Court.**

Where, upon trial of theft the evidence did not raise the question of bailment or embezzlement, there was no error in not charging thereon.

**5.—Same—Principal—Accomplice.**

All parties participating in a misdemeanor are principals, and where, upon trial of theft and a conviction of misdemeanor theft, the evidence show-

ed that the defendant was an accomplice, there was no reversible error in the court's failure to define principals, besides there were no requested instructions thereon.

### 6.—Same—Sufficiency of the Evidence—Telephone.

Where, upon trial of theft and a conviction of misdemeanor theft, the evidence sustained the conviction and showed that the telephone was used in the sale of the alleged property, the actual presence of the defendant was not required and there is no reversible error.

### 7.—Same—Original Taking—Theft—Rehearing.

Where, in a motion for rehearing, appellant contended that the evidence was insufficient that the alleged property in question was taken by anyone, but the record showed that it was sold under defendant's direction and that he got the benefit of the same, there was no reversible error.

### 8.—Same—Circumstantial Evidence—Charge of Court.

Where, upon trial of theft, the defendant admitted that he sold the alleged stolen property and appropriated the proceeds thereof, and other evidence supported his testimony, there was no error in the court's failure and refusal to charge on circumstantial evidence. Distinguishing Stewart v. State, 71 Texas Crim. Rep., 480, 150 S. W. Rep., 381.

### 9.—Same—Ownership—Possession.

Where, the alleged stolen wagon was standing out in the open but was in the constructive possession of the alleged owner, the fact that he took the double-tree and laid it inside the yard of the defendant and placed some of the irons under defendant's porch, would not change the status of ownership.

Appeal from the District Court of Potter. Tried below before the Honorable Henry S. Bishop.

Appeal from the conviction of misdemeanor theft; penalty: one year confinement in the county jail.

The opinion states the case.

*P. F. Sapp,* and *Hendricks & Mood,* for the appellant.—Cited cases in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted of misdemeanor theft, in the District Court of Potter County, and his punishment fixed at confinement in the county jail for one year.

A motion to dismiss the appeal has been made by the State, for the reason that no sentence appears in the record. While appellant was indicted for a felony, he was only convicted of misdemeanor, and in such case no sentence is necessary, the judgment performing the office of both judgment and sentence.

From the record, it appears that in May, 1919, appellant purchased from one Clayton, the furnishings and personal property used in connection with a hotel in Amarillo. The record contains no list or inventory of the property so conveyed, but it is uncontradicted that at the time appellant bought said property, and took charge of the hotel, the wagon which constitutes the alleged stolen property, was then standing in an alley back of the hotel, and that it remained there until it was sold in August, 1919, under circumstances more fully detailed hereafter. The wagon was the property of one Puckett, who made said hotel his headquarters. Puckett was away when appellant took charge of the hotel, but in June, 1919, came to the hotel, and engaged a room and board from appellant, remaining until some time in July, when he went out to work in the harvest fields of neighboring counties. He did not remove or disturb the wagon while in Amarillo. When he came back to said place on the 10th of August, the wagon was gone, and its whereabouts or the name of the purchaser nowhere appear in the record further. It does appear, however, that on August 7, appellant was placed in the Potter County jail, for some offense, and that he needed money with which to employ counsel; and said fact became known to a woman, to whom he seems to have been engaged to marry, and she undertook to assist him to raise the needed funds. She testified that she went over to the hotel, after he was placed in jail, and that while she was there, a man came and offered $20 for the wagon in question, and that she had seen it standing out there in the alley for a good while, and thought it belonged to appellant; thereupon, she telephoned to the jail to know if he would take

$20 for it, and the jailer's wife, after communicating with appellant, telephoned back that he would take that amount, and thereupon she sold the wagon to said party, receiving $20 from him, which amount she sent to appellant's attorney, to be applied on his fee for defending appellant. On the instant trial, and while a witness, appellant admitted receiving this telephone message at the jail, and further admitted telling the messenger that he would take $20 for said wagon, and that he knew the money was paid to his attorney for his benefit, but said that when he bought the personal property connected with said hotel, he thought the wagon in question was a part of that he acquired, and that when the wagon was sold, he believed it to be his property acquired in such manner. This was his only defense, except certain legal questions raised by his attorney.

The trial court charged the jury that if they found from the evidence that appellant bought said wagon from Clayton, or believed that it was included in the goods sold by Clayton to him, or if the jury entertained a reasonable doubt of said matters, appellant should be acquitted. This, we think, sufficiently presented appellant's defensive theory, and the special charges relative thereto, were properly refused.

The property was in the legal care, control, and management of Puckett, the owner, when same was taken, even though he was temporarily out of the county. It was in a public alley, and nothing appears in the record showing that the owner had surrendered his possession thereof to appellant or any other person. The fact, if true, that he asked appellant if it was, or would be, in his way, and received a negative answer, would not operate as any transfer of possession or control over the property. Property lost or left out on the range or commons, is in the possession of the owner as far as the law of theft is concerned, until it appears affirmatively that in some way such possession has been superseded by that of another.

There was no question of bailment or embezzlement in the case, not a particle of evidence appearing to show that the wagon was held in any trust relationship either by Clayton or appellant; and there could be no such offenses committed as theft by bailee, or embezzlement, except such relation existed.

If the conviction had been for felony theft, a reversal would be made necessary, by reason of the fact that appellant's only connection with the taking would appear from the evidence to be that of an accomplice. The well known distinction between an accomplice and a principal in theft is, that the connection of the accomplice, and what he does, transpires before the commission of the actual crime by the one who actually takes the property. It appears that the agreement and assent of appellant to the taking of the wagon by the apparently innocent agent, was made and given before the wagon was sold, and thus appropriated by her for the use and benefit of the appellant. Our decisions are numerous, to the effect that in misdemeanor cases, facts which would show one an accomplice in a felony, constitute him a principal offender. See Branch's Criminal Law, Sec. 681. There seems to have been no exception to the court's charge for any failure to define "principals," and no special instruction was presented embodying such definition. This procedure is held necessary, in order to present error of this character in misdemeanor charges.

There are no bills of exception in the record, and the only contention as to the evidence, in the motion for new trial, is that if same shows guilt, it is of some character of unlawful appropriation of property, other than theft. We cannot agree with this contention. As stated above, appellant was communicated with over the telephone, by the woman who afterwards sold the wagon in question, a few minutes, or at most, a short time before the sale was actually made, and his willingness to accept the offered price of $20 for the wagon was then expressed by him. There was no contention that the woman thought, or believed, or had any idea that she had any right to sell the wagon as any other than the property of the appellant, and we think that his statement, made to the owner, and to other parties who inquired after the wagon when its loss was discovered, to the effect that he had sold the wagon, was in law, correct. It appears to be true

that he was not bodily present when the wagon was sold, but in the present day, when by means of telephonic communications distances are annihilated, and parties acting together in certain enterprises, are brought practically face to face by the use of the telephone, we think a situation was fully shown and developed, which made him a principal in the appropriation of the wagon by such sale.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

---

ON REHEARING

May 5, 1920

LATTIMORE, Judge.—In his motion for rehearing, appellant lays much stress upon the fact, as claimed by him, that the record presents no sufficient evidence that the wagon in question was taken by any one. The facts show beyond question that the wagon was in the alley adjacent to appellant's premises on August 1st; the owner testified that he saw it there then;—also, that said wagon was gone on August 10th thereafter. About the latter date, Puckett, the owner, began hunting for it, and went to appellant's place and asked him where it was. Receiving no reply, and actuated by some information he received from the cook of appellant, he pressed the question, and appellant told him he had sold it, and offered to pay him $20 for it. Puckett further testified that he had three conversations that day with appellant, and that in the last one, appellent again admitted that he had sold the wagon, and offered to pay him $100 for it.

Mrs. Martin, for the appellant, testified that acting for him, and after telephoning to where he was, to know if the price offered her was satisfactory to appellant, she sold the wagon in question for $20.

Appellant testified in his own behalf that he honestly thought the wagon was his, and that he had the right to sell it; and that when he received the 'phone message from Mrs. Martin to know if he would take $20 for it, he said, "Yes, mam;" and that he knew that the money received for the wagon was given to his lawyer and used for his benefit.

It seems so admittedly true that the wagon was sold, and sold under appellant's direction and that he got the benefit of the same, and that this occurred between August 7th and 10th, that we are unable to see any room for dispute over the proposition that the wagon was taken. Mrs. Martin said that on August 7th, the wagon "set there;" that a man came and looked at it, and offered her $20 for it, and that she telephoned and was told that the appellant

said "take it," and that she sold it—took the $20, and sent it to appellant's attorney. When the owner came back a few days later the wagon was gone. The matter of the taking could hardly have been made clearer.

Appellant contends that the trial court should have charged on circumstantial evidence, and cites the Stewart case, 71 Texas Crim. Rep., 480, 160 S. W. Rep., 381. The facts are wholly dissimilar. Stewart's possession of the alleged stolen horse some four months after it was stolen, and his false explanation of how he came by such possession, were substantially the criminating facts in that case, and it was purely one of circumstantial evidence. This Court has always held that the admissions and confessions of an accused taken a case out of the rule of circumstantial evidence, and Vernon cites, in Section 38, under Article 735 of his Code of Criminal Procedure, numerous authorities to establish the proposition that a charge on circumstantial evidence is not required when the accused has made admissions or confessions which show that he committed, or which connect him with the crime charged. If the State's case be true, appellant admitted that he sold Puckett's wagon; if the testimony of his witness, Mrs. Martin, be true, she sold it at his direction and in either event he appropriated the proceeds; and we are wholly unable to see where only circumstances were relied upon by the State.

We have carefully examined the record, and conclude that we were correct in the original opinion, in holding the testimony sufficient to show that the wagon when taken, was in the care, control, and management of Mr. Puckett, its owner. We do not think the fact that Mr. Puckett himself had laid the double-tree inside the yard of appellant's hotel, and had placed some of the irons under appellant's porch, would change the status of ownership.

The motion for rehearing is overruled.

*Overruled.*